Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000598
15-AUG-2019
08:34 AM

NO. CAAP-16-0000598

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


RICHARD J. MARIANO, Claimant-Appellant, v.
UNITED PARCEL SERVICE, INC., Employer-Appellee, and
LIBERTY MUTUAL INSURANCE COMPANY, Insurance Carrier-Appellee


APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(Case No. AB 2013-484 (DCD No. 2-10-07753))


SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Leonard and Chan, JJ.)

Claimant-Appellant Richard J. Mariano (Mariano), *pro se*, appeals pursuant to Hawaii Revised Statutes (HRS) § 386-88 (2015)[1] from the July 26, 2016 Decision and Order (D&O) of the Labor and Industrial Relations Appeals Board (LIRAB or Board), which denied additional temporary total disability (TTD) and permanent partial disability (PPD) benefits relating to work injuries Mariano sustained on August 30, 2010.

Mariano argues that the LIRAB erred in affirming the October 22, 2013 D&O of the Director of the Department of Labor and Industrial Relations (Director and DLIR, respectively), which

---

[1] HRS § 386-88 provides, in relevant part:

> **Judicial review.** The decision or order of the appellate board shall be final and conclusive, except as provided in section 386-89 [**Reopening of cases**], unless within thirty days . . . the director or any other party appeals to the intermediate appellate court . . . . The appeal shall be on the record, and the court shall review the appellate board's decision on matters of law only. No new evidence shall be introduced in the appellate court, except that if evidence is offered that is clearly newly discovered evidence and material to the just decision of the appeal, the court may admit the evidence.

awarded Mariano TTD benefits from October 12, 2011, through June 3, 2012, and June 10, 2013, through October 6, 2013, and denied Mariano's request for additional PPD benefits despite being "certified" unable to work.

Upon review of the record on appeal and relevant legal authorities, giving due consideration to the issues raised and arguments advanced by the parties, we affirm LIRAB's July 26, 2016 D&O with regard to his lumbar injury and remand for consideration of his neck and right shoulder injury.

As gleaned from his opening brief,[2] Mariano asserts four errors, restyled herein for clarity. The LIRAB erred in: **(1)** refusing to consider Mariano's stricken submissions; **(2)** deciding that Mariano was not entitled to TTD payments from October 6, 2013 to the present, despite being certified "off-of-work" and not explaining how it derived this cut-off date; **(3)** denying him PPD benefits for his lumbar injury; and **(4)** not addressing Mariano's concerns about the accuracy and completeness of the Director's October 22, 2013 D&O with regard to his neck and right shoulder injury.

1.  The LIRAB did not err in striking Mariano's untimely submissions. Mariano asserts that LIRAB erred in striking, and not considering, medical records filed past the deadline set out in the LIRAB's Pretrial Order; however, this was wholly within LIRAB's discretion. Hawaii Administrative Rules (HAR) § 12-47-22 provides for LIRAB's issuance of a "Pretrial order" governing the conduct of proceedings, including the submission of medical reports, and provides for sanctions for noncompliance. HAR § 12-47-22(b)(3) and (d). "HAR § 12-47-1

---

[2]    Mariano's opening and reply briefs are in wholesale noncompliance with Hawai'i Rules of Appellate Procedure (HRAP) Rule 28. While it is well-settled that failure to comply with HRAP Rule 28(b)(4) is alone sufficient to affirm, noncompliance does not always result in dismissal of the claims, and the appellate courts have "consistently adhered to the policy of affording litigants the opportunity 'to have their cases heard on the merits, where possible.'" Morgan v. Planning Dep't, Cty. of Kauai, 104 Hawai'i 173, 180-81, 86 P.3d 982, 989-90 (2004) (citation omitted). This is particularly so where the remaining sections of the brief provide the necessary information to identify the party's argument, Marvin v. Pflueger, 127 Hawai'i 490, 496, 280 P.3d 88, 94 (2012), and this policy is "most acute where . . . the litigant is *pro se*." Middleton v. Wong, 127 Hawai'i 241, 277 P.3d 335, Nos. 29164, 30618, 2012 WL 1688535, at *1 (App. May 15, 2012) (SDO). Thus, insofar as they are discernable, we will address Mariano's arguments.

2

provides that these rules 'shall be construed to secure the just, speedy, and inexpensive determination of every proceeding.'" Pua v. Puna Certified Nursery, Inc., 133 Hawai'i 449, 329 P.3d 354, CAAP-12-0000918, 2014 WL 2949443, at *3 (App. Jun. 30, 2014) (SDO) (citations omitted).

"Medical report deadline means the date that all medical reports or records *shall* be filed at the [LIRAB]." HAR § 12-47-22(b)(3) (emphasis added)). "If the [LIRAB] sets a medical report submission deadline in a pre-trial order and consistently maintains that deadline, it is not an abuse of discretion for the Board to disregard late-filed medical report submissions." Pua, 2014 WL 2949443, at *4 (citing HAR § 12-47-22(c); see also Tautua v. BCI Coca-Cola Bottling Co. of Los Angeles, 127 Hawai'i 413, 279 P.3d 78, No. 30291, 2012 WL 2308162, at *2 (App. Jun. 18, 2012) (SDO) (concluding the Board did not abuse discretion in excluding medical reports when the Board amended initial pretrial order that controlled the course of the appeal).

Here, Mariano's stricken submissions were "medical reports or records" subject to the extended December 9, 2014 medical reports discovery deadline. Mariano apparently did not assert a reasonable explanation for his failure to timely submit his documents. Rather, Mariano testified that he did not submit the certificates of disability (COD) because he did not believe it was necessary or that they were medical records. LIRAB, therefore, committed no abuse of discretion in striking Mariano's untimely medical records.

2. Mariano argues that he is entitled to additional TTD benefits because he remains under Dr. Morioka's care due to his inability to work as a result of the August 30, 2010 work injury.[3] In addition, Mariano asserts that LIRAB "refused" to consider Dr. Kimura's CODs in determining that he was not entitled to TTD after October 6, 2013. UPS argues that LIRAB properly upheld the Director crediting Dr. Diamond's opinion, as

---

[3] Mariano states in his opening brief that he was under Dr. Kimura's care from August 30, 2010, to April 24, 2015, and with Dr. Morioka from April 24, 2015, to present.

3

it was supported by substantial record evidence that Mariano reached medical stability from the August 30, 2010 work injury as of December 31, 2011, and was no longer entitled to TTD. We agree.

"'[T]otal disability' is defined as 'disability of such an extent that the disabled employee has no reasonable prospect of finding regular employment of any kind in the normal labor market.'" H. Stand. Comm. Rep. No. 418-70, in 1970 House Journal, at 976. "Thus, the legislature intended that total disability benefits should compensate a worker for wages lost when he or she is unable to find regular employment of any kind due to a work-related injury[.]" Ihara v. State, DLNR, 141 Hawaiʻi 36, 42, 404 P.3d 302, 308 (2017).

"Where a work injury causes total disability not determined to be permanent in character, the employer, for the duration of the disability . . . . shall pay temporary total disability benefits[.]" HRS § 386-31(b) (2015). TTD payments are "terminated in two ways: (1) if the employee is able to resume work, or (2) by order of the [D]irector." Atchley v. Bank of Hawaiʻi, 80 Hawaiʻi 239, 243, 909 P.2d 567, 571 (1996) (citing HRS § 386-31(b) ("The payment of these benefits shall only be terminated upon order of the director or if the employee is able to resume work."). Under the second alternative, HRS § 386-31(b)(1) provides in pertinent part:

> If the director determines, based upon a review of medical records and reports and other relevant documentary evidence, that an injured employee's medical condition may be stabilized and the employee is unable to return to the employee's regular job, the director shall issue a preliminary decision regarding the employee's entitlement and limitation to benefits and rights under Hawaii's workers' compensation laws.

Id. (quoting HRS § 386-31(b)(1)).

In general, "[a] workers' compensation claimant has the burden of proving each of the essential elements of his or her claim." 82 Am. Jur. 2d Workers' Compensation § 518 (May 2019) (footnotes omitted). In Hawaiʻi, the LIRAB requires the claimant to establish entitlement to TTD benefits. See West v. Forza Retail HI, LLC., No. AB 2012-212, 2015 WL 13260079, at *9 (LIRAB Jul. 28, 2015); Ruff v. Gonzo Dispensing Co., LLC, No. AB 2010-

4

449(K) (4-04-01048), 2012 WL 12949138, at *4 (LIRAB Jan. 30, 2012).

Furthermore, "the credibility of witnesses and the weight to be given their testimony are within the province of the trier of fact and, generally, will not be disturbed on appeal." Tamashiro v. Control Specialist, Inc., 97 Hawai'i 86, 92, 34 P.3d 16, 22 (2001) (citing State v. Jenkins, 93 Hawai'i 87, 101, 997 P.2d 13, 27 (2000); Bank of Hawaii v. Kunimoto, 91 Hawai'i 372, 390-91, 984 P.2d 1198, 1216-17 (1999)). Moreover, "a conclusion of law will not be overturned if supported by the trial court's findings of fact and by the application of the correct rule of law." Id. at 93, 34 P.3d 23 (citing Robert's Hawai'i Sch. Bus, Inc., v. Laupahoehoe Transp. Co. Inc., 91 Hawai'i 224, 239, 982 P.2d 853, 868 (1999)).

Here, the LIRAB considered several CODs timely submitted by Mariano; rehabilitation treatment plans and progress reports from Roy S. Murakami, P.T.; interim reports, procedure notes, progress notes, updates, and visit summaries from Dr. Morioka; a physical therapy progress evaluation from Dayna S. Kuwahara, P.T.; progress notes from Dr. Kimura; and a discharge evaluation. The March 8, 2012 discharge evaluation report indicated that Mariano completed therapy and could work within the medium-heavy demand level.

The LIRAB credited Dr. Diamond's April 16, 2012 opinion that Mariano's condition became permanent and stationary by the end of 2011 and he could return to work at that time with restrictions prescribed in a Functional Capacity Evaluation (FEC). The Board further noted that on April 18, 2012, UPS informed Mariano that he was eligible for vocational rehabilitation.

Thus, the evidence before the LIRAB supported the determination that Mariano was "able to resume work," meaning "an industrially injured worker's injury has stabilized after a period of recovery and the worker is capable of performing work in an occupation for which the worker has received previous training or for which the worker has demonstrated aptitude." HRS § 386-1; see HRS § 386-31(b).

The record supports the Board's finding that Mariano had not met his burden of proving that he was temporarily and totally disabled due to his August 30, 2010 work injury beyond October 6, 2013, when his TTD benefits ended. Moreover, the record and application of HRS § 386-31(b)(1) also supports the Board's conclusion that Mariano reached a point of stability as of December 31, 2011. Therefore, the LIRAB did not err in determining that Mariano was not entitled to TTD compensation for his August 30, 2010 lower back injury beyond October 6, 2013.

3. As for PPD benefits, Mariano argues that the physicians under whose care he has remained have not released him to work and refutes Dr. Diamond's opinion that his condition was stable as of the end of 2011. Mariano also asserts that the lumbar PPI rating was premature and should have been assessed in conjunction with his June 4, 2012 through June 7, 2013 return to work time period, although he does not explain why.

PPD benefits compensate a worker for the loss of bodily integrity, i.e., the loss of a physical or mental function. Ihara, 141 Hawai'i at 42, 404 P.3d at 308; HRS § 386-32(a) (2015). While LIRAB generally places great weight upon a physician's initial impairment rating, it is not the only component of the Board's assessment. Ihara, 141 Hawai'i at 43, 404 P.3d at 309; (citing Cabatbat v. Cty. of Hawai'i, Dep't of Water Supply, 103 Hawai'i 1, 8 n.16, 78 P.3d 756, 763 n.16 (2003), as corrected (Dec. 8, 2003)). LIRAB's decisions indicate its consideration of factors other than the physician's impairment rating, such as whether the complainant is able to participate in the same types of hobbies and daily and work activities as prior to the accident. Id. (citing, e.g., Belanio v. State, Case No. AB 2007-532 (1-03-10259) at 8 ("claimant's inability to return to customary job resulted in 3% PPD"); Deponte v. City & Cty. of Honolulu, Case No. AB 97-624 (2-95-11372) at 3-4 ("claimant's inability to perform activities of daily living resulted in 2% PPD"); Chi v. City & Cty. of Honolulu, Case No. AB 2006-116 (2-04-01998) at 3 ("claimant awarded 3% PPD due to inability to engage in recreational and daily living activities").

6

Here, in rendering his third IME of Mariano, Dr. Diamond reviewed the medical and therapeutic reports regarding Mariano's treatment and progress as well as his own physical examination of Mariano, and while acknowledging that ongoing continued home exercise and a brief return to physical therapy was recommended, opined that Mariano could return to work with the restrictions contained in his FCE and that his condition was permanent and stationary. Given the evidence in the record, it was not error for the LIRAB to give weight to Dr. Diamond's opinion and to find that Mariano's condition resulting from the August 31, 2010 injury was stationary and ratable.

4.    Mariano contests the LIRAB's finding that "there is no evidence of permanent impairment of Claimant's neck or right shoulder." UPS maintains that the only permanent impairment rating on appeal is Dr. Diamond's lumbar rating of 8% and that Mariano did not submit a rating for his neck and right shoulder; hence, he is not entitled to PPD benefits for his cervical and right shoulder injuries.

The record before us is replete with documentation of Mariano's lumbar, *neck, and right shoulder* injuries which arose from the August 30, 2010 work injury. See for example, Dr. Diamond's April 16, 2012 IME report, which begins by stating that "Mariano is a 46-year-old man who injured his *neck* and lower back at work on 8/30/10" (emphasis supplied) and includes notes in the "Medical Record Review" portion, which indicate neck and right shoulder involvement as reported by the doctors and therapists seen by Mariano. Not only did Dr. Diamond not issue a PPI rating, he did not address neck and right shoulder impairment or treatment whatsoever in any IME report, despite acknowledging that, at a minimum, injury to Mariano's neck was involved. Consequently, the evidence in the record does not support LIRAB's conclusion that there is no evidence of permanent impairment resulting from injury to Mariano's neck and/or right shoulder.

Based on the foregoing, we affirm the LIRAB's July 26, 2016 D&O to the extent that it concludes Mariano is not entitled to continued TTD and/or PPD for his *lumbar* injury, and remand for determination of his entitlement to benefits for injury to his

right shoulder and neck resulting from the August 30, 2010 work incident.

DATED:   Honolulu, Hawai'i, August 15, 2019.

On the briefs:

Richard J. Mariano,
Claimant-Appellant, *pro se.*

Presiding Judge

Leighton K. Oshima
Darlene Y.F. Itomura,
for Employer/Insurance
Carrier-Appellee.

Associate Judge

Associate Judge

8